IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. REEVES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ROBERT W. REEVES, APPELLANT.

Filed June 4, 2019.    Nos. A-18-828, A-18-829.

Appeals from the District Court for Madison County: JAMES G. KUBE, Judge. Affirmed.

Patrick P. Carney, of Carney Law, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

MOORE, Chief Judge.

INTRODUCTION

Robert W. Reeves appeals from his plea-based convictions in two cases, cases Nos. A-18-828 and A-18-829, in the district court for Madison County. In both appeals, he asserts that the court imposed excessive sentences. The court imposed restitution in both cases, and Reeves also asserts that in doing so, the court failed to determine the victim's actual damages and his ability to pay. For the reasons set forth herein, we affirm.

BACKGROUND

In case No. A-18-828 (the shoplifting case), the State filed an information in the district court, charging Reeves with theft by shoplifting in violation of Neb. Rev. Stat. § 28-511.01(1) (Reissue 2016), a Class IIA felony. The information was later amended to add a charge of conspiracy to commit theft by shoplifting in violation of § 28-511.01(1) and Neb. Rev. Stat. § 28-202(1) (Cum. Supp. 2018), a Class IIA felony.

- 1 -

In case No. A-18-829 (the burglary case), the State filed an information charging Reeves with burglary in violation of Neb. Rev. Stat. § 28-507(1) (Reissue 2016), a Class IIA felony; attempted burglary in violation of § 28-507(1) and Neb. Rev. Stat. § 28-201(1)(b) (Cum. Supp. 2018), a Class IIIA felony; possession of methamphetamine in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2018), a Class IV felony; and child abuse in violation of Neb. Rev. Stat. § 28-707(1) (Reissue 2016), a Class IIIA felony. The information in that case was later amended to add five more charges of burglary, all Class IIA felonies; a charge of theft by unlawful taking or disposition in violation of Neb. Rev. Stat. § 28-511(1) (Reissue 2016), a Class IIA felony; a charge of conspiracy to commit theft by unlawful taking or disposition in violation of § 28-202 and § 28-511(1), a Class IIA felony; an additional charge of attempted burglary in violation of § 28-201(1) and § 28-507(1), a Class IIIA felony; and a charge of conspiracy to commit burglary in violation of § 28-202(1) and § 28-507(1), a Class IIA felony.

During a plea hearing held before the district court on June 25, 2018, Reeves pled to reduced charges in both cases. In the shoplifting case, Reeves pled no contest to theft by shoplifting, and the conspiracy to commit theft by shoplifting charge was dismissed. In the burglary case, Reeves pled guilty to two counts of burglary, possession of methamphetamine, child abuse, and theft by unlawful taking, and the other charges were dismissed. When Reeves' attorney announced the plea agreements, he informed the district court that there would be no recommendations at the time of sentencing in either case. He also informed the court that restitution had not been "figured out at this point" and asked the court to "set a restitution hearing at the same time."

After both Reeves and the prosecutor confirmed their respective understandings of the plea agreements as stated by Reeves' attorney, the district court asked Reeves if he recalled the "statutory and constitutional rights" of which he had been advised during a previous court hearing. Reeves indicated that he did recall those rights, that he had no questions about them, and that he did not need the court to repeat "any of that information" for him. Reeves then pled no contest to the remaining charge in the shoplifting case and guilty to the remaining charges in the burglary case. Reeves affirmed that he was entering his pleas freely and voluntarily, that he was not under the influence of any alcohol or illegal drug, and that no one had made any threat, used any force, or promised him anything in exchange for his pleas other than the plea agreement as stated. He also affirmed his understanding of his right to a jury trial, to not incriminate himself, and to confront and cross-examine witnesses and his understanding that by pleading, he was waiving those rights, as well as waiving the presumption of innocence, the right to subpoena witnesses and evidence on his own behalf, any defenses he might have, and any technical defects that might exist in the record. Finally, Reeves affirmed his understanding that there was no guarantee of the court entering an order of probation on some or all of the charges, and he informed the court that he had had sufficient time to discuss his cases with his attorney and was satisfied with the legal services that had been provided to him so far.

The State then provided a factual basis for the crimes to which Reeves was pleading in both cases. According to the factual basis provided for the shoplifting case, Reeves and another individual went to a Wal-Mart store and filled a cart full of "mostly electronic items, laptops and other similar items" before exiting "through the garden section" while one of them held open the

door "using the automatic button" behind the counter. Reeves and the other individual then "switched places and did the same thing all over again," taking more than $5,000 in property from Wal-Mart in the process. In the burglary case, the first burglary count to which Reeves pled resulted from him breaking into a business called MP Global from which he took a number of electronic items, such as computers. A search warrant was served on Reeves' residence, and methamphetamine was found during the ensuing search. The child abuse charge resulted from the fact that young children were present in the house in which methamphetamine was found. The other burglary count to which Reeves pled resulted from his actions in breaking into a number of storage units and taking various items from within those storage units. Finally, according to the factual basis provided for the theft by unlawful taking charge, Reeves and another individual stole a vehicle valued at over $5,000 from a car lot in Norfolk.

The district court found beyond a reasonable doubt that a factual basis existed for Reeves' pleas and that his pleas in both cases were made intelligently, voluntarily, and knowingly. The court accepted Reeves' pleas and found him guilty of the remaining charges in both cases. The court ordered a presentence investigation report (PSI) and scheduled a sentencing and a restitution hearing.

During the sentencing hearing, Reeves indicated that he had reviewed the PSI with his attorney; his only issue with the PSI was that he could not remember a 2008 juvenile adjudication for third degree sexual assault of a child. Reeves discussed various other information from the PSI with the district court, including the fact that his 1-year-old child was in the custody of the Nebraska Department of Health and Human Services (DHHS). Reeves also discussed with the court his use of methamphetamine around the children in the home, and he agreed that the PSI showed that hair follicle tests of the children in the home were positive for methamphetamine. The court inquired about the issue of restitution in both cases, and the State presented evidence on that issue.

With respect to restitution, the State first presented testimony from an employee of MP Global. He testified that during a burglary at the business on November 24, 2017, several DeWalt power tools, a Siemens "PLC programming" laptop computer, and one other laptop computer were taken. The Siemens computer was recovered, but "all of the programming for the PLC's" had been erased, rendering the $10,000 computer useless to the company and requiring it to purchase another one. He explained the Siemens laptop was "pretty much a generic laptop," and that the costly part is "the actual programs," which are purchased separately from the computer. He explained further that "when you do PLC programming . . . you only have one license for it." If the program is lost, it cannot simply be reinstalled; the company has to purchase the program again. The MP Global employee indicated that insurance did not cover any of the company's loss and that the total value of restitution being sought by the company was $12,545. He stated that because of the theft, the company had to install more lighting in the parking lot to deter further theft, which cost an additional $4,000 over the $12,545 loss from the items that were taken or damaged.

The State also presented testimony from a Wal-Mart employee about the shoplifting incident that occurred there on November 30, 2017. He stated that the majority of items taken were "high-dollar electronic items, amongst many other things." He had no direct knowledge of any of the merchandise that was taken being recovered after Reeves' arrest, but he testified that even if it

had been, Wal-Mart corporate policy was not to resell any item with a hard drive "or anything where you can input memory" once it leaves the building. He testified that the loss to Wal-Mart from the shoplifting incident was $5,951. The employee stated that one cart load of items was recovered in the Wal-Mart parking lot and that those items were included in Wal-Mart's restitution request.

The State did not present any other witnesses on the issue of restitution, but the prosecutor noted with respect to the storage unit burglaries that one individual, who had some fishing poles that were not recovered, "hopes whoever has them is catching something with them" and that another individual had informed the State that $350 worth of items from her storage unit were not recovered.

Reeves' attorney then asked the district court to take judicial notice of Reeves' employment history and earning capacity "as noted in the PSI." He also asked the court to take notice of statements in the PSI from MP Global and Wal-Mart delineating information about the items stolen. The court confirmed that it would take judicial notice of "that information that's contained in the PSI." The parties then presented arguments to the district court concerning sentencing and restitution.

In sentencing Reeves, the district court reviewed various information about his life, including his employment and educational history and drug use. The court stated its belief that Reeves had the ability to pay some restitution even though it might take a while for him to do so. The court informed Reeves that it would be imposing sentences of incarceration rather than probation, stating further that Reeves "caused a lot of damage to both of these businesses" and that upon Reeves' release "there's a possibility that [he] can pay some of this back." The court also observed that, while breaking into storage units was "not like breaking into a home," Reeves had still taken personal items of value to the owners of those items.

In the burglary case, the district court sentenced Reeves to imprisonment for a term of 3 to 5 years for the first burglary conviction; 1 to 2 years for possession of methamphetamine, to be served concurrent with the first burglary sentence; 2 to 3 years for child abuse, to be served consecutive to the burglary and possession of methamphetamine sentences; a consecutive term of 3 to 5 years for the second burglary conviction; and a consecutive term of 1 to 2 years for theft by unlawful taking. The court gave Reeves credit for 144 days of time served against the first burglary sentence. The court ordered Reeves to pay $10,000 in restitution to MP Global within 3 years of his release from incarceration. In the shoplifting case, the court sentenced Reeves to a term of imprisonment for 3 to 5 years, to be served consecutive to the sentences in the burglary case, and it ordered him to pay $5,000 in restitution to Wal-Mart within 3 years of his release. With respect to the order of restitution in the shoplifting case, Reeves' attorney acknowledged the evidence that Wal-Mart was unable to resell items taken from the store, but he asked that the items recovered be released to Reeves so that he could perhaps "recoup some of the money for that through private sales." The court denied Reeves' request, observing that it had not ordered restitution of the full amount requested given that certain merchandise could not be resold by the store.

ASSIGNMENTS OF ERROR

Reeves asserts that the district court abused its discretion by (1) failing to impose sentences of probation, (2) imposing excessive sentences, and (3) failing to determine the victims' actual damages and his ability to pay restitution.

STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). Whether probation or incarceration is ordered is a choice within the discretion of the trial court, whose judgment denying probation will be upheld in the absence of an abuse of discretion. *State v. Cerritos-Valdez*, 295 Neb. 563, 889 N.W.2d 605 (2017). Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively. *State v. Brown*, 302 Neb. 53, 921 N.W.2d 804 (2019). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Gibson*, 302 Neb. 833, 925 N.W.2d 678 (2019).

The rule that a sentence will not be disturbed on appeal absent an abuse of discretion is applied to the restitution portion of a criminal sentence, and the standard of review for restitution is the same as it is for other parts of the sentence. *State v. McMann*, 4 Neb. App. 243, 541 N.W.2d 418 (1995).

ANALYSIS

*Excessive Sentence.*

Reeves first argues that the district court abused its discretion by failing to impose sentences of probation and imposing excessive sentences.

In the burglary case, Reeves was convicted of two counts of burglary, both Class IIA felonies, and sentenced to imprisonment for 3-5 years for each of these convictions; possession of methamphetamine, a Class IV felony, and sentenced to imprisonment for 1-2 years; child abuse, a Class IIIA felony, and sentenced to imprisonment for 2-3 years; and theft by unlawful taking, a Class IIA felony, and sentenced to imprisonment for 1-2 years. § 28-507(1); § 28-416(3); § 28-707(1); § 28-511(1). The district court ordered that the possession of methamphetamine sentence be served concurrently with the first burglary sentence; the sentences for the remaining convictions in that case were to be served consecutively. In the shoplifting case, Reeves was convicted of theft by shoplifting, a Class IIA felony, and sentenced to imprisonment for 3-5 years, to be served consecutive to the sentences in the burglary case. § 28-511.01. Class IIA felonies are punishable by up to 20 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2018). Class IIIA felonies are punishable by up to 3 years' imprisonment and 18 months' postrelease supervision, a $ 10,000 fine, or both; there is no minimum term of imprisonment, but there is a minimum of 9 months' postrelease supervision if imprisonment is imposed. § 28-105. Class IV felonies are punishable by up to 2 years' imprisonment and 12 months' postrelease supervision, a $ 10,000 fine, or both; there is no minimum term of imprisonment, but there is a minimum of 9

months' postrelease supervision if imprisonment is imposed. § 28-105. Reeves was not subject to the postrelease supervision portion of the sentence that normally accompanies Class IIIA and Class IV felonies because he was also sentenced to imprisonment for Class IIA felonies. See § 28-105(6). Thus, Reeves' sentences in both cases were within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* However, the sentencing court is not limited in its discretion to any mathematically applied set of factors. *State v. Gibson*, 302 Neb. 833, 925 N.W.2d 678 (2019). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Garcia, supra*.

While acknowledging that the sentences imposed in both cases were within the statutory limits, Reeves argues that the sentences were an abuse of discretion because the factors set forth in Neb. Rev. Stat. § 29-2260(3) (Reissue 2016) weigh in favor of probation, not incarceration, and even if incarceration was appropriate, the sentences imposed were excessive. He also argues that the sentences in both cases should have been ordered served concurrently.

Factors listed in § 29-2260(3) to be considered by a court when considering whether to withhold a sentence of imprisonment and grant probation, include:

    (a) The crime neither caused nor threatened serious harm;

    (b) The offender did not contemplate that his or her crime would cause or threaten serious harm;

    (c) The offender acted under strong provocation;

    (d) Substantial grounds were present tending to excuse or justify the crime, though failing to establish a defense;

    (e) The victim of the crime induced or facilitated commission of the crime;

    (f) The offender has compensated or will compensate the victim of his or her crime for the damage or injury the victim sustained;

    (g) The offender has no history of prior delinquency or criminal activity and has led a law-abiding life for a substantial period of time before the commission of the crime;

    (h) The crime was the result of circumstances unlikely to recur;

    (i) The character and attitudes of the offender indicate that he or she is unlikely to commit another crime;

    (j) The offender is likely to respond affirmatively to probationary treatment; and

    (k) Imprisonment of the offender would entail excessive hardship to his or her dependents.

Reeves argues that a sentence of probation over confinement should be given unless compelling reasons exist to show otherwise. Reeves was convicted of a Class IV felony, which normally calls for a sentence of probation except in certain circumstances, but because he was sentenced consecutively to imprisonment for other felonies, the district court was not required to impose a sentence of probation in this case. See Neb. Rev. Stat. § 29-2204.02(2)(a) (Reissue 2016).

Here, the record indicates that the district court carefully considered relevant factors and did not abuse its discretion in either declining to impose probation or in the length of imprisonment imposed. Reeves was 25 years old at the time of sentencing, had an 11th grade education, and was unemployed. The PSI indicates that he has a moderate criminal history. As a juvenile, he was cited for third degree assault and juvenile uncontrollable and sentenced to 9 months of probation, which was revoked. The PSI reflects additional juvenile charges for third degree assault and third degree sexual assault of a child, although Reeves denied knowledge of the sexual assault charge to the probation officer conducting the PSI. At age 18, he was convicted of disturbing the peace. As an adult, he has been convicted of shoplifting on two occasions, disturbing the peace, theft of services, and various traffic offenses. In addition to the juvenile court case with respect to Reeves' minor child that was filed following the discovery of methamphetamine in Reeves' residence, he had a misdemeanor negligent child abuse/no injury case pending in county court at the time of the PSI, although the record from the sentencing hearing in the present cases indicates that that case had been dismissed. The PSI revealed that methamphetamine use was a significant area of concern for Reeves. He scored in the moderate to high risk range for substance abuse on the Simple Screening Instrument. On the Substance Abuse Questionnaire he scored in the medium risk range on the truthfulness and violence scales and the maximum risk range on the drugs scale. Reeves' scores on the level of service/case management inventory placed him at a very high risk level for recidivism. The probation officer noted that Reeves had failed to comply with recommendations of treatment providers and directives from DHHS with regard to his minor child. Based on "the severity of the current offenses, [Reeves'] criminal history, and [his] disregard for the effects of his actions on others," the probation officer recommended that he be sentenced to a term of incarceration.

At the sentencing hearing, the district court discussed Reeves' drug use, educational and employment history, status of his child, and prior criminal history with him. Prior to sentencing Reeves, the court again referenced various aspects of Reeves' life, including the role his drug use played in the crimes at issue here. The court observed that Reeves had caused damage to both of the business victims and had stolen items of value from the owners of the storage units. The court stated that Reeves was not a qualified candidate for probation in either case and that sentences of less than incarceration would depreciate the seriousness of all of the crimes committed and would promote disrespect for the law.

Based upon the record before us, we find no abuse of discretion in the imposition of sentences of incarceration rather than probation, the length of the sentences imposed, or in the decision to impose certain sentences consecutively rather than concurrently.

*Restitution.*

Reeves asserts that the district court erred by failing to determine the victims' actual damages and his ability to pay restitution.

"A sentencing court may order the defendant to make restitution for the actual physical injury or property damage or loss sustained by the victim as a direct result of the offense for which the defendant has been convicted." Neb. Rev. Stat. § 29-2280 (Reissue 2016). Section 29-2280 vests trial courts with the authority to order restitution for actual damages sustained by the victim of a crime for which a defendant is convicted. *State v. Ramirez*, 285 Neb. 203, 825 N.W.2d 801 (2013). According to Neb. Rev. Stat. § 29-2281 (Reissue 2016):

> To determine the amount of restitution, the court may hold a hearing at the time of sentencing. The amount of restitution shall be based on the actual damages sustained by the victim and shall be supported by evidence which shall become a part of the court record. The court shall consider the defendant's earning ability, employment status, financial resources, and family or other legal obligations and shall balance such considerations against the obligation to the victim. In considering the earning ability of a defendant who is sentenced to imprisonment, the court may receive evidence of money anticipated to be earned by the defendant during incarceration. . . . The court may order that restitution be made immediately, in specified installments, or within a specified period of time not to exceed five years after the date of judgment or defendant's final release date from imprisonment, whichever is later.

Further, Neb. Rev. Stat. § 29-2282 (Reissue 2016) provides:

> In determining restitution, if the offense results in damage, destruction, or loss of property, the court may require: (1) Return of the property to the victim, if possible; (2) payment of the reasonable value of repairing the property, including property returned by the defendant; or (3) payment of the reasonable replacement value of the property, if return or repair is impossible, impractical, or inadequate.

After the sentencing court determines that a conviction warrants restitution, it then becomes the sentencing court's factfinding responsibility to determine the victim's actual damages and the defendant's ability to pay. *State v. Ramirez, supra*. An evidentiary hearing is required to support a restitution order under § 29-2281, and restitution should be based on evidence of both actual damages and the defendant's ability to pay. See *State v. Holecek*, 260 Neb. 976, 621 N.W.2d 100 (2000). When a court orders restitution to a crime victim under § 29-2280, restitution is a criminal penalty imposed as punishment and is part of the criminal sentence imposed by the sentencing court. *State v. Clapper*, 273 Neb. 750, 732 N.W.2d 657 (2007).

Reeves argues with respect to both cases on appeal that the district court did not fulfill its factfinding responsibility in determining a restitution amount. He acknowledges that employees from MP Global and Wal-Mart testified to their businesses having sustained damages of $12,545 and $5,951, respectively, but he argues that the evidence was insufficient as to the actual damages because these figures either included items recovered by these businesses and/or did not take into

account the value of any items still held by police. Reeves argues that because the property still under law enforcement control could be returned to the relevant victim as contemplated by § 29-2282, a proper factfinding would take into consideration the value of items held by law enforcement and such amount would be accounted for in a restitution order.

Contrary to Reeves' arguments, the district court's orders of restitution of $10,000 to MP Global and $5,000 to Wal-Mart were based on evidence of those businesses' actual damages. The restitution orders took into consideration the testimony of the witnesses as to those businesses' actual losses as well as the testimony indicating that the laptop returned to MP Global had very little value without the computer program erased from it and the fact that Wal-Mart was unable to resell certain types of electronic items after they were removed from the store. In fact, the court specifically informed Reeves that its order of restitution to Wal-Mart was based on the evidence that merchandise could not be resold. We also note that the language of § 29-2282 is discretionary and does not require the court to return property to the victim. See *Holloway v. State*, 293 Neb. 12, 875 N.W.2d 435 (2016) (word "may" when used in statute will be given its ordinary, permissive, and discretionary meaning unless it would manifestly defeat statutory objective). The amount of actual damages was properly established.

The remaining issue here is whether the district court's restitution orders were based on evidence of Reeves' ability to pay, i.e., whether the court gave meaningful consideration to the factors set forth in § 29-2281. In arguing that the court did not, Reeves relies on *State v. Wells*, 257 Neb. 332, 598 N.W.2d 30 (1999). In that case, the trial court ordered the defendant to pay restitution in an aggregate sum of $88,867.12 "'forthwith.'" *Id.* at 341, 598 N.W.2d at 37. At the sentencing hearing, the State introduced sworn testimony and documentary evidence as to the victims' actual losses, and on appeal, the Nebraska Supreme Court determined that the amount of actual damages was properly established. However, the Supreme Court found the record void of the trial court's meaningful consideration of the defendant's ability to pay the amount ordered and to pay it "forthwith," given the absence from the record of sworn and meaningful information regarding the defendant's ability to do so. The record did show that the defendant was a self-employed farmer, with title to some real property, that he was legally obligated to pay certain farm operating loans and expenses, and that he was having difficulty obtaining an additional operating loan. The Supreme Court concluded that the order to pay restitution "forthwith" was not appropriate as the record lacked information as to unencumbered and liquid assets with which the defendant could meet the restitution obligation. Accordingly, the Supreme Court vacated the restitution order and remanded for proceedings consistent with the Court's opinion and the factors found in § 28-2281. See, also, *State v. Yost*, 235 Neb. 325, 455 N.W.2d 162 (1990) (restitution order vacated where no evidentiary hearing was held, only information as to actual damages was information from victims included in PSI, and sentencing court failed to give meaningful consideration to factors set forth in § 28-2281).

Reeves also relies on *State v. Mick*, 19 Neb. App. 521, 808 N.W.2d 663 (2012). In that case, the defendant agreed to pay restitution as part of a plea agreement. This court reversed the restitution order, however, because the record failed to indicate that the trial court meaningfully considered the factors mandated by § 29-2281 with respect to the defendant's ability to pay restitution. We determined that, despite the plea agreement, the trial court still had to give

meaningful consideration to the defendant's ability to pay restitution. See, also, *State v. St. Cyr*, 26 Neb. App. 61, 916 N.W.2d 753 (2018) (restitution order reversed where evidence presented of victim's medical bills but no consideration by court of defendant's ability to pay, defendant stated he had no money but would do his best, and court did not state when or how restitution would be paid by defendant whose incarceration was lengthy).

This case is more comparable to *State v. Holecek*, 260 Neb. 976, 621 N.W.2d 100 (2000). In that case, the defendant was sentenced to 60 months' probation and as a condition of probation was ordered to pay restitution to a victim in the amount of $6,000, with payments to be made in 60 monthly installments of $100 each. On appeal, the defendant claimed that the record was insufficient to show that the trial court meaningfully considered his ability to pay. The Nebraska Supreme Court disagreed, finding that the trial court had ample evidence on this issue. In *Holecek*, the trial court had before it the PSI, which contained information about the defendant's employment, hours, and gross pay at the time of sentencing. The PSI also contained specific information about the defendant's financial obligations. The Supreme Court found that the defendant's statements in the PSI regarding his financial condition were his own statements and would be allowable evidence against him pursuant to Neb. Rev. Stat. § 27-801(4)(b)(i) (Reissue 2016). Accordingly, the Supreme Court concluded that the defendant's statements in the PSI "meet the requirement that a restitution award be supported by evidence which shall become part of the record," and it affirmed the restitution order. *State v. Holecek*, 260 Neb. at 982, 621 N.W.2d at 105.

Here, Reeves did not testify on the issue of his ability to pay; his attorney simply asked the court to take judicial notice of Reeves' employment history and earning capacity "as noted in the PSI." A review of the PSI shows that Reeves has an 11th grade education and was unemployed at the time of sentencing. He reported to the probation officer that he participated in special education courses for reading comprehension while in school, but he did not note a diagnosis of a learning disability. He informed the probation officer that after getting a job at a fast food establishment, he never returned to school. Reeves reported a period of unemployment since June 2017, which he attributed to "terms of county incarceration" and continued substance abuse. He reported employment in a maintenance position at a business from January 2016 to June 2017, working 45 hours per week, earning $14.50 per hour. The business informed the probation officer, however, that Reeves' employment was only from November 2016 to August 2017. Reeves also informed the probation officer that he was employed by MP Global, one of the victims here, from 2013 to 2016 as a general laborer, working 38 to 46 hours per week, earning $11.50 per hour, which according to Reeves was his longest period of employment. MP Global informed the probation officer that Reeves' employment was actually from March 12-31, 2015. Reeves has one biological child, who was in DHHS custody at the time of sentencing. The PSI shows that Reeves has been ordered to pay $50 per month in child support. He reported other debts to the probation officer of $5,000 in unpaid bank loans, $100 for unpaid child support, and an unspecified amount of unpaid medical bills for the birth and treatment of his child. He reported no current income and noted financial support via his mother.

At the sentencing hearing, the district court stated that Reeves had the ability to work and pay some restitution, noted that he would not be able to pay while incarcerated, but stated, "I think

after you get out, I think there's a possibility that you can pay some of this back." The court ordered Reeves to pay restitution totaling $15,000 within 3 years of his release from incarceration.

The State argues that the issue of Reeves' ability to pay the restitution order is not ripe for resolution given the uncertainty of Reeves' financial condition at the time of his release. The State cites no statutory or case law support for this proposition, and we have found none. A defendant's ability to pay restitution in the future is, by its very nature, somewhat speculative. As noted by § 29-2281 and the cases discussed above, a court is to consider a defendant's earning ability, employment status, financial resources, and financial obligations when determining his or her ability to pay. When incarceration is imposed, the court is to consider a defendant's income earning capacity during incarceration. None of this information guarantees that a defendant will, in fact, be able to make restitution upon release from incarceration.

The district court was able to take into consideration the information contained in the PSI regarding Reeves' ability to pay restitution and while it did not specify a payment plan, it gave Reeves 3 years after release to pay the restitution amount. On this record, we cannot find an abuse of discretion in the restitution order.

CONCLUSION

The district court did not abuse its discretion in imposing sentence or in its order of restitution.

AFFIRMED.